# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) | |
| CAUSE OF ACTION ) | |
| ) | |
| Plaintiff-Relator, ) | |
| ) | Case No. 12 CV 9673 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Chicago Transit Authority's motion to dismiss [42] Plaintiff-Relator's complaint. Relator brings this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that Defendant submitted false and fraudulent claims to the Federal Transit Administration. For the following reasons, Defendant's motion is granted. The case is set for status hearing on 11/06/14 at 9:00 a.m.

**I.      Factual and Procedural Background[1]**

To combat fraud against the United State government, the False Claims Act ("FCA") imposes civil liability on a party that presents false or fraudulent claims for payment or that uses a false record or statement material to a false or fraudulent claim. See 31 U.S.C. § 3729(a)(1)(A) & (B). Because it would be impossible for the government alone to investigate and pursue all potential FCA violations, the statute provides a *qui tam* enforcement mechanism and allows a private party (*i.e.,* a relator) to bring suit on behalf of the government. See 31 U.S.C. § 3730(b). In this case, Cause of Action ("Relator"), a nonprofit organization, has brought suit against the

---

[1] The Court's summary of the facts is drawn from Relator's complaint. For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth therein. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443–44 (7th Cir. 2009).

Chicago Transit Authority ("CTA" or "Defendant"). Relator alleges that the CTA intentionally caused the government to allocate additional transportation funds to it that were not authorized.

The CTA is a municipal corporation that provides public transportation services in the city of Chicago and its suburbs. Under 49 U.S.C. § 5307, large urban areas, including the greater Chicago area served by the CTA, are eligible for transportation funding from the federal government. Funding is determined by a grant formula that includes the number of "bus revenue vehicle miles" that are reported to the National Transit Database ("NTD"). Compl. ¶ 2, 3. Revenue miles are defined as the miles when a "vehicle is available to the general public and there is an expectation of carrying passengers." *Id.* at ¶ 41. In contrast, "deadhead miles" are those in which a vehicle is out of revenue service. See *id.* at ¶ 40. Relator alleges that between reporting years 2001 and 2010, the CTA "knowingly used definitions of bus revenue vehicle miles and deadhead miles that are both different from and noncompliant with the definitions required under the NTD reporting manuals, NTD reporting glossary, and U.S. Department of Transportation, Federal Transit Authority ("FTA") circular guidance and/or regulations." *Id.* at ¶ 6. The CTA's improper classification of deadhead miles as revenue miles resulted in the federal government overpaying the CTA under the § 5307 formula grant program. See *id.* at ¶ 9.

The CTA's overstatement of revenue miles was uncovered during a 2006–07 performance audit for the State of Illinois Auditor General. Two reports discussing the inaccurate reporting were produced as a result. First, Thomas Rubin, a member of the Illinois audit team, prepared a 25-page technical report ("Technical Report") regarding the overstatement of revenue miles. The Technical Report states that the CTA "appears to have been improperly classifying as Vehicle Revenue Miles (VRM) and Vehicle Revenue Hours (VRH) motor bus miles and hours that, under the Federal Transit Administration's (FTA) National Transit

Database (NTDB) regulations, are not properly so classed." Tech. Report 1, Compl., Ex. 3. The Report further recommends that the "CTA notify FTA of this condition, including rendering this report to FTA," and "revise its methodologies for reporting VRM and VRH to become compliant with the applicable statute and implementing regulations." *Id.* Rubin presented his Technical Report to the CTA and Illinois Auditor General, but they failed to inform the FTA of the issue. See Compl. ¶¶ 51–53. In 2009, Rubin went to the Department of Transportation Office of Inspector General to report the issue and provided the office with a copy of his report. See *id.* at ¶ 54; Rubin Aff. ¶ 8, Compl., Ex. 2.

Second, a final audit report discussing the CTA's performance was released in March 2007 by the Illinois Auditor General ("Auditor General's Report"). A short section of this lengthy document indicates that the CTA may have been incorrectly reporting deadhead miles as revenue miles. See Auditor General's Report 72, Compl., Ex. 4 ("Our review raised questions about the accuracy of CTA's reporting of revenue vehicle hours and miles. CTA may be incorrectly reporting some deadhead hours/miles as revenue hours/miles[.]").

Relator filed suit in the District of Maryland in May 2012 and attached the Technical Report, the Auditor General's Report, and Rubin's Affidavit to its complaint. The action was transferred to the Northern District of Illinois in November 2012. After the United States declined to intervene in the action, the complaint was unsealed and Defendant filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Defendant argues that the action is barred under § 3730(e)(4)—the so-called public disclosure bar—because the allegations in the complaint were already disclosed when the complaint was filed, and Relator is not an original source of the information. Relator filed a brief in opposition [55] and attached an April 2012 letter from the FTA to the General Manager of the CTA ("FTA Letter"). The letter states that

the FTA conducted an in-depth review of the CTA's reporting of revenue miles and that the CTA "should revise its data for the 2011 Report Year to reflect the definition of 'revenue service' in the NTD Reporting Manual[.]" FTA Letter, Relator's Opp'n, Ex. 1. The letter further states, however, that the FTA will not require the CTA to revise its data for prior years. See *id.*

## II.    Legal Standards

Defendant styled its motion as one under Federal Rule of Civil Procedure 12(b)(1) and argued that the Court lacks subject matter jurisdiction under the FCA's public disclosure bar. See § 3730(e)(4)(A). Relator contends that the motion should have been brought pursuant to Rule 12(b)(6), for failure to state a claim, because § 3730(e)(4)(A) is not jurisdictional. Defendant apparently agrees, and subsequently requested that the Court treat its motion as one pursuant to Rule 12(b)(6). See Def.'s Reply 11.

The confusion regarding the applicable Rule of Civil Procedure that governs Defendant's motion stems from the fact that two different versions of § 3730(e)(4)(A) are at issue. The 1986 version states: "*No court shall have jurisdiction* over an action under this section based upon the public disclosure of allegations * * * unless * * * the person bringing the action is an original source of the information." § 3730(e)(4)(A) (emphasis added). This is a jurisdictional requirement. See *U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, -- F.3d. --, 2014 WL 4092258, *4 (7th Cir. Aug. 20, 2014) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467–70 (2007)). In 2010, the FCA was amended and the phrase "no court shall have jurisdiction" was replaced with the phrase *"[t]he court shall dismiss* an action or claim under this section[.]" § 3730(e)(4)(A) (emphasis added). Following the amendment, the Seventh Circuit questioned whether § 3730(e)(4)(A) (2010) should be treated as jurisdictional. See *Absher*, -- F.3d at *4 (explaining that "it is no longer clear that *Rockwell*'s holding is still good

law" as the "Supreme Court's reasoning was based on the fact that, at the time, § 3730(e)(4) contained the language '[n]o court shall have jurisdiction over an action under this section[.]' ") (internal quotations omitted). Regardless of whether the 2010 version of the public disclosure bar is deemed substantive or jurisdictional, the Court's disposition of Defendant's motion is the same.[2] The pertinent legal standards under Rules 12(b)(1) and 12(b)(6) are discussed below.

Under Rule 12(b)(6), a motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in a plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth,* 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what

---

[2] Because the 2010 amendments are not retroactive, the applicable version of § 3730(e)(4) is the one that was "in force when the events underlying th[e] suit took place." *Leveski v. ITT Education. Servs.*, 719 F.3d 818, 828 (7th Cir. 2013) (internal quotations omitted). Accordingly, the 1986 version applies to allegedly fraudulent reporting that occurred before March 23, 2010, and the 2010 version applies to fraudulent reporting that occurred thereafter. See *id.*

5

the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly,* 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.,* 631 F.3d 823, 832 (7th Cir. 2011).

The standard that the Court applies to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.,* 332 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (as is the case here), the Court accepts all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus,* 322 F.3d at 946. "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008); see also *Reed v. Illinois,* 2014 WL 917270, at *2 (N.D. Ill. Mar. 10, 2014).

**III. Analysis**

Relator's allegations of fraudulent revenue mile reporting are based on the Technical Report and the Auditor General's Report. See Compl. (attaching as exhibits the reports and Rubin's affidavit). Defendant argues that the reports qualify as public disclosures and require dismissal of the complaint because Relator is not an original source of the information. Under § 3730(e)(4)(A), a case is barred "if substantially the same[3] allegations or transactions as alleged in

---

[3] The 1986 version of this provision deprives the court of jurisdiction over an action that is "*based upon* the public disclosure" of the allegations. See § 3730(e)(4)(A) (1986) (emphasis added). The Seventh Circuit interpreted "based upon" to mean "substantially similar to" the allegations already in the public domain. See *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 910 (7th Cir. 2009). Thus, the 2010

6

the action or claim were publicly disclosed * * * unless * * * the person bringing the action is an original source of the information." This provision is meant to deter parasitic *qui tam* actions. *Glaser*, 570 F.3d at 913. "[W]here a public disclosure has occurred, that authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose." *Id.* at 913 (internal citations and quotations omitted). Accordingly, once information becomes public, only the Attorney General and an original source relator may represent the United States. *Id.* at 913.

The 1986 version of the statute defines an original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action. § 3730(e)(4)(B). Under the amended version, a relator must establish either (1) that prior to a public disclosure he voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based, or (2) that he has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions and has voluntarily provided the information to the government before filing an action. § 3730(e)(4)(B).

Courts conduct a three-step inquiry to determine whether a suit may be maintained under § 3730(e)(4). See *Glaser*, 570 F.3d at 913. First, the court asks whether the allegations have been publicly disclosed. *Id.* If so, it next asks whether the lawsuit is based upon (*i.e.* is substantially the same as) those publicly disclosed allegations. See *id.* If it is, the court determines whether the relator is an original source of the information upon which its lawsuit is based. *Id.*

Here, however, the only issue in dispute is whether Relator's allegations were publicly disclosed. Relator did not respond to Defendant's argument that the complaint allegations are substantially the same as the Technical Report and the Auditor General's Report, nor did Relator

---

amendments expressly incorporate the Seventh Circuit standard. *Leveski*, 719 F.3d at 828, n.1.

contest Defendant's assertion that it does not qualify as an original source. See Relator's Opp'n. Relator has accordingly conceded these points. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument * * * results in waiver" and a party's "silence" in response to an argument leads to the conclusion that a point is conceded). Additionally, while the complaint alleges in conclusory fashion that Relator is an original source, see Compl. ¶¶ 15, 19, it provides no factual allegations in support and thus fails to sufficiently allege that it qualifies. Accordingly, the Court turns to whether there was a public disclosure by the time that Relator filed its complaint in May 2012.

"[T]he function of a public disclosure is to bring to the attention of the relevant authority that there has been a false claim against the government." *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). The Seventh Circuit has explained that a *qui tam* action serves no purpose when the relevant authority is already in a position to vindicate society's interest. See, *e.g., Glaser*, 570 F.3d at 913; *Feingold*, 324 F.3d at 495. A public disclosure thus occurs when the "critical elements exposing the transaction as fraudulent are placed in the public domain." *Glaser*, 670 F.3d at 913 (quoting *Feingold*, 324 F.3d at 495).

Both versions of § 3730(e)(4) contain three categories of disclosures that preclude a relator from maintaining a claim. (At issue here is the second disclosure category.). The 1986 version provides for dismissal if the action is based upon disclosure of allegations or transactions:

[1] in a criminal, civil, or administrative hearing,

[2] in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or

[3] from the news media[].

§ 3730(e)(4)(A) (1986) (Arabic numerals added). Under the 2010 version, a claim must be

8

dismissed if allegations were publicly disclosed:

> (i) in a *Federal* criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other *federal* report, hearing, audit, or investigation; or
>
> (iii) from the news media[.]

§ 3730(e)(4)(A) (emphasis added). In short, whereas the 1986 version of the statute included disclosures made in state and local contexts, see *Graham Cnty Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 301 (2010), the amended version is limited to disclosures in federal contexts. As discussed earlier, the 1986 version of the statute applies to allegations of fraud that occurred before March 23, 2010, and the 2010 version applies to events thereafter.[4] For the reasons that follow, public disclosures have occurred that bar this action.

First, under both versions of the statute, the allegations in the complaint were publicly disclosed in a federal investigation, see § 3730(e)(4)(A)(ii), when the Federal Transit Administration sent its letter to the CTA discussing the inaccurate reporting of revenue miles and requesting that the CTA revise the reporting of revenue miles for reporting year 2011. See *Glaser*, 570 F.3d at 913–14. In *Glaser*, allegations of improper Medicaid billing were publicly disclosed after a federal Medicare and Medicaid agency sent a letter to the defendant requesting repayment for improper use of billings codes. See *id.* Like the letter in *Glaser*, the FTA Letter indicates an active investigation by federal authorities to recover funds that Defendant should not have received. See *id.* This is sufficient to trigger the public disclosure bar because:

> the purpose of a public disclosure is to alert the responsible authority that fraud

---

[4] Relator urges the Court to apply the 2010 amendments retroactively for various reasons. Relator's Opp'n at 8. Seventh Circuit and Supreme Court precedent on this very topic preclude the Court from doing so. See *U.S. ex rel. Health v. Wisconsin Bell, Inc.*, 760 F.3d 688, 690, n.1 (7th Cir. 2014) ("[T]he amendment [to the public disclosure provision] was not retroactive.") (citing *Graham Cnty*, 559 U.S. at 283, n.1).

> may be afoot, and that purpose is served where that authority itself issued [documents] containing information that substantiates an allegation of fraud. This is not a case where the government was simply aware of [defendant's] billing practices. Rather, the appropriate entity responsible for investigating claims of Medicare abuse had knowledge of possible improprieties with [defendant's] billing practices and was actively investigating those allegations and recovering funds.

*Id.* at 914 (internal quotations and citations omitted).

Here, the complaint alleges that Thomas Rubin, a member of the Illinois audit team, alerted the Department of Transportation to the CTA's inaccurate reporting in 2009. See Rubin Aff., Compl., Ex. 2; Compl. ¶ 54. At some point, the Federal Transit Administration began an "in-depth review," of the CTA's reporting practices. See FTA Letter, Relator's Opp'n, Ex. 1. As part of its investigation, the FTA asked the CTA for various information and received an October 2011 memorandum from the CTA as well as "detailed data on the patterns and blocks used by CTA to schedule its buses," which the FTA studied and analyzed. See *id.* After its review, the FTA determined that the CTA needed to revise its data for the 2011 reporting year to ensure the application of "a consistent definition of 'revenue service' across all transit systems[.]" See *id.* Such actions amount to precisely the type of active investigation that the Seventh Circuit identified in *Glaser*. See 570 F.3d at 914. Accordingly the CTA's inaccurate reporting was publicly disclosed in the FTA's investigation by the time the complaint was filed in May 2012.

As to the Illinois Auditor General's Report and Rubin's Technical Report, Relator does not contest that they qualify as disclosures under the 1986 version of § 3730(e)(4). As discussed earlier, the purpose behind a public disclosure is to bring a false claim to the attention of the relevant authorities. Accordingly, a disclosure to a public official with direct responsibility for the allegations at issue qualifies under § 3730(a)(4)(e). See *U.S. v. Bank of Farmington*, 166

F.3d 853, 861 (7th Cir. 1999). Likewise, administrative reports that contain information that substantiates allegations of fraud are public disclosures. See *Feingold*, 324 F.3d at 496 ("Administrative reports are publicly disclosed because, by their very nature, they establish the relevant agency's awareness of the information in those reports.").

Here, the complaint alleges that Rubin told the Department of Transportation Office of Inspector General about the inaccurate reporting and presented the office with a copy of the Technical Report. Given that the Inspector General is charged with investigating fraud, see 5 U.S.C. App. 3, § 2, and thus has "responsibility for the claim in question," Rubin's disclosure of his findings during the Illinois performance audit comes within the scope of § 3730(e)(4)(A) (1986). See *Bank of Farmington*, 166 F.3d at 861. The Illinois Auditor General's Report, which discusses the CTA's inaccurate reporting, also qualifies as a public disclosure as it indicates that a "responsible authority" was alerted "that fraud may be afoot." See *Feingold*, 324 F.3d at 496.

Not contesting that the reports in fact qualify, Relator instead contends that the Court should "constru[e] an effectiveness requirement from the disclosure bar" and find that without "*effective* public disclosure * * * the public disclosure bar is rendered inert." Relator's Opp'n at 15. Relator argues that it should be allowed to pursue the case because the government's failure to intervene was unwise and may reflect improprieties or bad faith on the part of government officials. See *id.* at 15–17. Relator cites no case law in support of—what it terms—an "alternative interpretation" of the FCA. See *id.* at 15–19. Relator rather points only to the history of the FCA and the fact that two people who formerly worked for the CTA now work in the White House and for the Department of Transportation. See *id.* at 16–17.

In the face of ample Seventh Circuit precedent interpreting "public disclosure," the Court cannot entertain Relator's argument that it should import an additional requirement that is not

11

present in the statute. See *e.g., Feingold*, 324 F.3d at 495–96 (interpreting § 3730(e)(4)(A) and holding that a public disclosure is effectuated when "the critical elements exposing the transaction as fraudulent are placed in the public domain," which includes "the responsible authority" issuing information that substantiates an allegation of fraud).

Accordingly, Relator's action is barred under both versions of § 3730(e)(4) because the allegations were publicly disclosed when Relator filed its complaint.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [42] is granted. Relator's complaint [3] is dismissed. The case is set for status hearing on 11/06/14 at 9:00 a.m. at which time the Court will discuss with counsel whether entry of a final judgment is appropriate at this time.

Dated: October 20, 2014

Robert M. Dow, Jr.
United States District Judge